IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

HARLEYSVILLE LIFE INSURANCE
COMPANY,

    Plaintiff,

v.                                                                           CASE NO. 5:10-cv-619-PWG

WENDY MONTGOMERY, et al.,

    Defendants.

**MEMORANDUM OPINION**

Before the court is cross-defendants B.C.W., Estate of Gregory Wilson, and Dustin Chase Wilson's motion for summary judgment (doc. 30) and cross-claimant Wendy Montgomery's opposition (doc. 34).

Also before the court is cross-claimant's (hereinafter "plaintiff"[1]) motion for summary judgment (doc. 31), cross-defendants' (hereinafter "defendants") opposition (doc. 35), and cross-claimant's reply (doc. 36).[2]

Having considered the motions and all other pleadings filed to date, the court finds as follows:

---

[1] The original plaintiff in this lawsuit, Harleysville Life Insurance Company, has been terminated from the action. *See* Doc. 25. The only claims that remain are those cross-claims filed by Wendy Montgomery against defendants B.C.W., Estate of Gregory Wilson, and Dustin Chase Wilson. *See* Doc. 14. Thus, for ease of terminology throughout this opinion, the court will refer to cross-claimant Wendy Montgomery as "plaintiff" and the remaining cross-defendants as "defendants."

[2] The parties have consented to an exercise of plenary jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  *See* Docs. 26–28.

**Factual Background**[3]

Gregory Wilson ("Gregory") was married to Gina Wilson-Daniels ("Daniels") from April 12, 1986 until their divorce on or about February 12, 2003. Daniels Aff. During their marriage, Gregory fathered two children by Daniels: Dustin Chase Wilson ("Dustin"), born August 26, 1988, and B.C.W., born April 1, 1998. *Id.*

Later, Gregory began a relationship with a co-worker, Wendy Montgomery ("Montgomery"); the two moved in together. Montgomery Depo. 14. Montgomery and Daniels considered themselves and presented themselves as husband and wife in the community.[4] *Id.* at 11, 16.

In 2006, Gregory Wilson ("Gregory") was employed at a Goodyear plant in Decatur, Alabama. Montgomery Depo. 12. Around August 2006, Hyosung America, Inc. ("Hyosung") purchased the Goodyear plant. *Id.* at 44. Thus, Goodyear requested that the employee benefit designations be updated. *Id.* On August 7, 2006, Goodyear confirmed with Gregory that he had designated "Wendy Montgomery, Domestic Partner, 100.000%" as the primary beneficiary for his Basic Group Term Life Insurance. *See* Doc. 31 Exh. C.

---

[3] There appears to be no actual dispute as to the facts which spawned this lawsuit. Rather, the parties dispute how the law applies to those facts.

[4] Defendants do not attempt to refute the conclusion that Montgomery and Gregory considered themselves to be married. The court notes that Montgomery's testimony both supports and undermines her claim that they were legally married under common law. For example, Montgomery states that the two had a joint-checking account, Montgomery Depo. 16, were listed in the phone book and on some documents as "Greg and Wendy Wilson," *id.* at 16–17, and called each other husband and wife, *id.* at 18–19; however, she also states that she left "three or four times," *id.* at 15, didn't file joint taxes with Gregory, *id.* at 19–20, and was listed on their checking account as "Montgomery," *id.* at 19–20. Regardless, Gregory and Montgomery's actual, legal marital status is irrelevant to this case.

In December 2006, Gregory completed new paperwork concerning employee benefits. Montgomery Depo. 44. One form was the Enrollment Form for Hyosung America Basic & Supplemental Life Insurance. *Id.* at 44–45; *see* Compl. Exh. B. On December 18, 2006, Montgomery and Gregory sat down together at work and filled out the form, prior to Gregory signing it. Montgomery Depo. 23. Montgomery completed the form in accord with instructions from Gregory, with the exception that Gregory entered his own social security number, date of hire, and signed the Enrollment Form. *See* Compl. Exh. B. This form enrolled Gregory with a Group Life Insurance and Accidental Death and Dismemberment Insurance Policy, policy number G004841-003 ("Policy"), obtained from Harleysville Life Insurance Company ("Harleysville"). Compl. Exh. B; *see* Compl. Exh. A.

According to the Hyosung Enrollment Form, the Primary Beneficiary listed for the policy was Montgomery; the Secondary Beneficiary was Dustin. Compl. Exh. B. Gregory signed the Enrollment Form at the bottom; he did not provide a signature in the middle of the form, under Section B. *See* Compl. Exh. B.

On October 4, 2008, Gregory was killed in an ATV accident. Daniels Aff. Both of Gregory's children–Dustin and B.C.W., a minor at the time of Gregory's death–survived him. Daniels was named Personal Representative of Gregory's estate. *See* Doc. 30 Exh. B. at 2–5.

Montgomery filed an Application for Life Insurance Proceeds with Harleysville on January 13, 2009, *see* Compl. Exh. C; Dustin and B.C.W.–through her mother, Daniels–filed their Applications on April 15, 2009. *See* Compl. Exh. D.

Based upon these competing notifications, Harleysville filed a Complaint for Interpleader and Declaratory Relief with this court on March 23, 2010, asserting that the Policy is governed

by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. *See* Compl. Harleysville then filed a Motion for Leave to Deposit Funds (doc. 12); this court granted Harleysville's motion and dismissed it from this lawsuit. *See* Docs. 22, 25.

## Standard of Review

A moving party is entitled to summary judgment if there is no genuine dispute as to any material fact, leaving final judgment to be decided as a matter of law. *See* FED. R. CIV. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The facts, and any reasonable inference therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970). Once met by the moving party, however, the burden shifts to the nonmovant to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990).

The fact that each party has filed a motion for summary judgment does not alter the Rule 56 standards applicable to each one. "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (citation omitted); *see also Busby v. JRHBW Realty, Inc. d/b/a RealtySouth*, 642 F. Supp. 2d 1283, 1289 (N.D. Ala. 2009) ("The fact that both parties

4

simultaneously are arguing that there is no genuine issue of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit."). "When both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." *Muzzy Products, Corp. v. Sullivan Indus., Inc.*, 194 F. Supp. 2d 1360, 1378 (N.D. Ga. 2002) (quoting *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1338–39 (Fed. Cir. 2001)).

## Legal Analysis

The life insurance proceeds at issue in this case flow from a plan governed by ERISA. Generally, ERISA preempts all state laws insofar as they may now or hereinafter relate to any employee plan which is subject to ERISA. *See* 29 U.S.C. § 1144(a). A state law "relates" to an employee benefit plan under ERISA if it has (1) a connection with or (2) reference to such a plan. *Cal. Div. of Labor Stds. Enforcement v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 324 (1997).

The Circuits are split in addressing whether ERISA preempts state law and requires federal common law to be applied in regard to the proper designation of beneficiaries of such plans. The Ninth and Tenth Circuits concluded that ERISA did not preempt application of the state doctrines of substantial compliance in identifying proper beneficiaries of an ERISA plan, holding that this determination did not affect the administration the plan, but merely provided aid in identifying the proper recipient of the proceeds. *See Bank of Am. Pension Plan v. McMath*, 206 F.3d 821, 829 (9th Cir. 2000); *Peckham v. Gem State Mut. of Utah*, 964 F.2d 1043, 1051 (10th Cir. 1992). The Fourth, Sixth, and Seventh Circuits held that ERISA preempted state law doctrine, adopting the following common law test:

> An insured substantially complies with the change of beneficiary provisions of an

> ERISA life insurance policy when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required to the change of beneficiary provisions of the policy.

*Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 564 (4th Cir. 1994).

Under Alabama law, the designation of a beneficiary of a life insurance policy, including any changes made to the policy, are governed by the provisions of the policy itself. *Zeigler v. Cardona*, 830 F. Supp. 1395, 1398 (N.D. Ala. 1993) (citing *Gibson v. Henderson*, 459 So.2d 845 (Ala. 1984)). However, "the law of equity [in Alabama] regards as having been done that which ought to be done and courts will give effect to the intention of the insured by holding that a change of beneficiary has been accomplished where [the insured] has done all that he . . . could do in order to comply with the provisions of the policy." *Id.*

It is unnecessary in this instance to decide whether ERISA preempts the state law doctrine. Regardless of whether state or federal common law applies, Wendy Montgomery is the properly named beneficiary.

Under federal common law, the court must look to whether the insured "(1) evidence[d] his . . . intent to make the change and (2) attempt[ed] to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required to the change of beneficiary provisions of the policy." *See Phoenix Mut. Life Ins. Co.*, 30 F.3d at 564.

As for the first prong, it is appropriate to look to Gregory's intent. Montgomery testified at length about Gregory's intention to name her as the beneficiary. *See* Montgomery Depo. 26–30. She stated that, "I know what he told me. . . . My name was not on [the title to his house and] he wanted me to be [taken] care of . . . . I put a lot of time into that place and a lot of money

6

and I had nothing if anything happened to him." *Id.* at 26. She also testified as to why he did not name his second child, B.C.W., as a beneficiary. "[H]e didn't want [Daniels] to have any control of the money since [B.C.W.] a minor. So he listed the adult child and that's why [B.C.W] is not on there . . . . He knew [Dustin] would take care of [B.C.W.]." *Id.* at 28–29.

Even if Montgomery's testimony is discounted as self-serving since she argues for herself to be named beneficiary under the Policy, defendants have not provided evidence showing that Gregory had any other intent. At most, defendants refer to deceased persons generally, stating that most deceased persons like to provide for their children. Defendants do not point to any evidence regarding Gregory's specific intentions in providing for his children.

The evidence preponderates that it was Gregory's intention to name Montgomery as beneficiary under the Policy. It is necessary, then, to examine whether he properly effectuated this intent by "undertaking positive action which is for all practical purposes similar to the action required to the change of beneficiary provisions of the policy." *See Phoenix Mut. Life Ins. Co.*, 30 F.3d at 564.

Defendants argue that the Policy's signature requirements have not been met, specifically pointing to the section entitled "Change in Beneficiary." To change the beneficiary on the Policy, the Insured must: "1. Write to the Covered Employer requesting the change; 2. Fill out and sign the required form; and 3. Send the form back to the Covered Employer." Compl. Exh. A at 10, "Change in Beneficiary." The change will then "[t]ake effect on the date [the insured] signed the form . . . ." *Id.*

7

Gregory's actions substantially conformed to the requirements of the Policy.[5] Gregory completed the Hyosung Enrollment Form, naming Montgomery as the primary beneficiary, and signed the bottom of the form, evidencing his intention that Montgomery be the primary beneficiary.[6] *See* Compl. Exh. B. He then gave the form to Hyosung; Hyosung documented Montgomery as beneficiary. *See* Doc. 31 Exh. D (showing Hyosung's belief that Montgomery was the beneficiary under the Policy). This designation mirrors Gregory's designation of Montgomery as beneficiary under Goodyear's policy. *See* Doc. 31 Exh. C. The Policy does not require that a signature be in each allotted space on the form; rather, it merely requires that Gregory "[f]ill out and sign" the form, which was done. The fact that Montgomery helped Gregory complete the form does not change this result; she did not sign the form for him, and this court finds no evidence of undue influence, nor have defendants argued such.

Thus, under both federal and state common law, Gregory properly named Montgomery as the primary beneficiary to his life insurance policy.

## Conclusion

This court finds that no genuine dispute as to any material fact exists and summary judgment is due to be granted to cross-claimant Wendy Montgomery. This court ORDERS that

---

[5] This court notes, however, that the facts in this case do not involve a change of beneficiary, but instead an initial enrollment into the Hyosung plan. There is no specific language in the Policy which references any requirements regarding the initial completion of an Enrollment Form or initial selection of a beneficiary.

[6] Defendants consistently refer to the form as "unsigned" and compare these facts with cases in which the beneficiary form contained no signature at all. *See* Defs.' Brief. This court distinguishes those cases from the facts here since Gregory signed at the bottom of the Enrollment Form.

cross-claimant's motion for summary judgment (doc. 31) is due to be GRANTED and cross-defendants' motion for summary judgment (doc. 30) is due to be DENIED. The court shall so rule by separate order.

**DONE** and **ORDERED** this 26th day of July, 2011.

_____
PAUL W. GREENE
CHIEF MAGISTRATE JUDGE